**CARNATION ENTERPRISES PVT. LTD., Commex Corporation, Crescent Foundry Company Private Limited, Govind Steel Co. Ltd., R.B. Agarwalla & Company, Super Castings (India), Tirupati International (P) Limited, and Uma Iron & Steel Co., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF COMMERCE, International Trade Administration, and United States Customs Service, Defendants,**

**and**

**Alhambra Foundry Co., et al., Defendants–Intervenors.**

**Court No. 89-04-00216.**

United States Court of International Trade.

July 21, 1989.

---

Kaplan Russin & Vecchi, Dennis James, Jr. and Kathleen F. Patterson, Washington, D.C., for plaintiffs.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C., Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis, New York City, and A. David Lafer, Washington, D.C., U.S. Dept. of Commerce, Office of Chief Counsel for Import Admin., Andrea Dynes and Andrew Fekkes Dynes, for defendants.

Collier Shannon & Scott, Paul C. Rosenthal, Carol A. Mitchell and Mary T. Staley, Washington, D.C., for defendants-intervenors.

## MEMORANDUM DECISION AND ORDER

DiCARLO, Judge:

Several Indian exporters of iron construction castings allege that the United States Department of Commerce lacks authority to conduct administrative reviews of a dumping order. Alleging the Court's residual jurisdiction under 28 U.S.C. § 1581(i) (1982), they seek to enjoin Commerce from publishing any results in two pending administrative reviews covering iron construction castings from India. Defendants move pursuant to Rule 12(b) of the Rules of this Court to dismiss this action for lack of jurisdiction or, alternatively, for failure to state a claim as to which relief can be granted.

The Court finds that it has jurisdiction under 28 U.S.C. § 1581(i) (1982), but that the Indian exporters are not entitled to an injunction against publication of either the preliminary or final review results in the pending administrative reviews.

## BACKGROUND

Commerce published a final affirmative determination on March 19, 1986 finding

that iron castings from India, except those sold by RSI (India) Pvt. Ltd., Kejriwal and Kajaria, were being sold at less than fair value in the United States. *Certain Iron Construction Castings From India; Final Determination of Sales at Less Than Fair Value*, 51 Fed.Reg. 9486 (Mar. 19, 1986). The antidumping duty order was published on May 9, 1986. *Antidumping Duty Order; Iron Construction Castings From India*, 51 Fed.Reg. 17,221 (May 9, 1986).

Fifteen domestic producers of iron construction castings challenged the exclusion from the dumping order of three Indian exporters—RSI, Kejriwal, and Kajaria. This litigation did not affect the exclusion of RSI or Kajaria, but did result in an affirmative dumping margin of 2.93 percent for Kejriwal. *Alhambra Foundry Co., Ltd. v. United States*, 12 CIT ——, 685 F.Supp. 1252, and 12 CIT ——, 701 F.Supp. 221 (1988).

In a separate action, Serampore Industries and the Engineering Export Promotion Council of India[1] challenged the affirmative findings for Serampore and the "all others." This litigation ultimately resulted in Serampore's exclusion from the dumping order because its dumping margin of 0.487 percent was found to be *de minimis*. *Serampore Indus. Pvt., Ltd. v. United States Dep't of Commerce*, 11 CIT ——, 675 F.Supp. 1354 (1987), 12 CIT ——, 696 F.Supp. 665 (1988), 13 CIT ——, 705 F.Supp. 602 (1989).

As a result of the litigation in both *Alhambra* and *Serampore*, the "all others" dumping margin shifted from Serampore's rate, 51 Fed.Reg. 17,221, to a combination of Serampore's and Kejriwal's rates, *Alhambra*, 12 CIT at ——, 701 F.Supp. at 225, and finally to Kejriwal's rate alone. *Serampore*, 13 CIT at ——, 705 F.Supp. at 604.

During litigation of *Alhambra* and *Serampore*, Commerce initiated two administrative reviews of the antidumping order on iron construction castings from India pursuant to timely requests under 19 U.S.C. § 1675(a) (1982 & Supp. V 1987). The first administrative review covers all entries of Indian iron castings, except those exported by the three companies excluded by the antidumping order, during the period of October 28, 1985 to April 30, 1987. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 53 Fed.Reg. 23,330 (June 19, 1987). The second covers all entries of Indian iron castings, again except those exported by the three companies excluded by the antidumping order, during the period from May 1, 1987 to April 30, 1988. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 53 Fed.Reg. 24,470 (June 29, 1988). To date, no preliminary or final results have been issued in either review.

On February 19, 1989, the Indian exporters sent a letter to Commerce asking it to terminate these reviews:

The basis—and only basis—for the two ... reviews was the original determination against Serampore. A copy of the original order [shows] that only Serampore was subject to an affirmative determination.... With the exclusion of Serampore, there is no affirmative finding or outstanding valid dumping order on which to base Section 751 reviews for 1985–87 or 1987–88. Reviews based on the original determination and order should, therefore, be terminated.

The domestic producers opposed the request to terminate the reviews on the basis that the *Serampore* litigation did not extinguish the existence of the antidumping duty order on iron construction castings from India, but rather altered the coverage of the order with respect to Serampore and Kejriwal. They argued that the status of the reviews with respect to all other companies remains unchanged.

On March 17, 1989, the Indian exporters replied that the "order" with respect to

---

1. In another action, the Engineering Export Promotion Council of India was dismissed as a party because the Court found that it lacked any "interested party" status. *RSI (India) Pvt., Ltd. v. United States*, 12 CIT ——, 678 F.Supp. 304, 305–06 (1988). No motion to dismiss the Council was made in the *Serampore* litigation.

Kejriwal can only cover entries subsequent to the date of the order when it is issued. They argued that

> while there will be an outstanding order as of the date the order against Kejriwal is published, there will no longer be an "outstanding" order having effect prior to that date on which to predicate reviews.... The Court's determination with respect to Serampore does, indeed, extinguish the order issued in 1986 and the Kejriwal order cannot review the order. [Commerce] is thus without legal authority to review periods prior to issuance of a new order covering Kejriwal. Accordingly, the reviews now taking place should be terminated.

Commerce did not terminate the reviews or otherwise respond to the Indian exporters' letters. On March 23, 1989, Commerce published notice of its determination upon remand in *Alhambra*, which set a dumping margin for Kejriwal. *Certain Iron Construction Castings From India; Amendment to Final Determination of Sales at Less Than Fair Value and Antidumping Order in Accordance With Decision Upon Remand*, 55 Fed.Reg. 11,989 (Mar. 23, 1989). Kejriwal then filed an action in this Court on April 3, 1989 to contest the finding of dumping against it. *Kejriwal Iron and Steel Works, Ltd. v. United States*, Court No. 89–04–00172.

On April 28, 1989, the Indian exporters filed an action in this Court alleging that the original dumping order is void *ab initio* as a result of the *Serampore* litigation and thus no valid underlying order exists on which to base administrative reviews until March 23, 1989, when Commerce published notice of the dumping margin for Kejriwal. The complaint seeks a declaratory judgment that the pending reviews are invalid and therefore unlawful, and an injunction against continuing the reviews.

On May 1, 1989, Commerce published its determination upon remand in *Serampore* that Serampore should be excluded from the antidumping duty order on iron castings from India. *Certain Iron Construction Castings From India; Amendment to Final Determination of Sales at Less Than Fair Value and Antidumping Order in Accordance With Decision Upon Remand*, 54 Fed.Reg. 18,562 (May 1, 1989).

During oral argument, the Court was also informed that a third administrative review based on the allegedly invalid order has now been requested and may soon be initiated.

## DISCUSSION

### I. MOTION TO DISMISS

The Indian exporters allege that the Court has jurisdiction under 28 U.S.C. § 1581(i) (1982). This is the residual jurisdiction of the Court, which may be invoked as a basis for subject matter jurisdiction where another subsection of section 1581 is unavailable or the remedy provided by the other subsection is "manifestly inadequate." *National Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1557 (Fed.Cir.1988); *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed.Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988).

Defendants argue that the action should be dismissed because the plaintiffs are attempting to circumvent the statutory scheme for judicial review after completion of an administrative review. Defendants argue that 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a specify "the terms and conditions upon which the United States has waived its sovereign immunity in consenting to be sued in the Court of International Trade." *Georgetown Steel Corp. v. United States*, 801 F.2d 1308, 1312 (Fed.Cir. 1986). Section 1516a(a)(2)(B) lists several types of agency determinations that are explicitly subject to judicial review in the Court of International Trade, including the final results of administrative reviews. Defendants argue that the Indian exporters may challenge Commerce's authority to conduct administrative reviews only after the reviews have been completed and the final results published in the *Federal Register*. Defendants thus urge that the exclusive means by which the Indian exporters may obtain judicial review is pursuant to 28 U.S.C. § 1581(c) (1982).

Defendants also move to dismiss on the basis that the Indian exporters have not exhausted their administrative remedies before Commerce. Commerce is currently conducting administrative reviews, a process which provides the Indian exporters an opportunity to comment on the preliminary results when they are published. Defendants state that the Indian exporters may raise their claims at that time and allow Commerce to respond:

> If Commerce does not agree with plaintiffs' claims and reaches final results contrary to plaintiffs' position, then plaintiffs will have an opportunity to challenge Commerce's decision by seeking judicial review of the agency's final results based upon this administrative record.
>
> Instead of properly raising their claims with Commerce during the course of the process (*i.e.* the comment period after the preliminary determination), plaintiffs seek to interrupt the agency process by seeking relief from the Court without allowing Commerce to decide the issue in a proper manner during the course of the administrative process. Simply writing two letters to the agency does not satisfy the requirement that plaintiffs must first exhaust their administrative remedies before pursuing judicial relief.

*Defendants' Memorandum in Support of Motion to Dismiss*, at 17–18.

Defendants note further that an action may be instituted pursuant to 28 U.S.C. § 1581(i) only by a person adversely affected or aggrieved by agency action within the meaning of 5 U.S.C. § 702. *See* 28 U.S.C. § 2631(i) (1982). Defendants argue that the Indian exporters lack standing because there has been no final agency action. Defendants state that Commerce has not yet reached a final decision with respect to the contention that it has no authority to conduct the reviews.

The domestic industry also moves to dismiss the complaint. In addition to the government's arguments, they argue that 19 U.S.C. § 1516a(a)(2)(A)(i)(II) requires challenges to an antidumping duty order to be filed within thirty days of publication in the *Federal Register*. Since the order was published on May 9, 1986, the domestic industry argues that the Indian exporters should have challenged it by June 8, 1986:

> Had plaintiffs challenged the order at that time, this Court clearly would have had jurisdiction ... under 28 U.S.C. § 1581(c).
>
> Plaintiffs cannot complain that they did not participate in the less-than-fair-value investigation and thus could not challenge the order. Nothing precluded plaintiffs from participating.... Although plaintiffs were not designated as respondents ..., [they] could have submitted voluntary responses. Through active participation in the investigation, plaintiffs could have sought exclusion from the affirmative final determination and subsequent antidumping duty order. Plaintiffs clearly did not seek exclusion ... at the time of [Commerce's] original investigation.
>
> Plaintiffs also did not express any interest in the less-than-fair-value investigation by entering an appearance as interested parties and expressing their concerns. Had they done so, they arguably would have preserved their right to challenge the ... antidumping duty order and seek relief from this Court....

*Defendant–Intervenors' Surreply*, at 3–4. The domestic industry thus argues that the Indian exporters' failure to challenge the antidumping duty order when it was published over three years ago does not now entitle them to challenge the order by invoking the Court's residual jurisdiction under 28 U.S.C. § 1581(i) (1982).

The Indian exporters do not dispute that if they participate in each of the reviews, they will have an opportunity to institute a civil action under 28 U.S.C. § 1581(c) after the notices of final affirmative results have been published. The Indian exporters would then be able to contest any factual findings or legal conclusions upon which the final results of the administrative reviews are based. *See* 19 U.S.C. § 1516a(a)(2)(A) (1982). The Indian exporters state, however, that they are not challenging the validity of the reviews *per se*,

but rather are challenging the validity of the original order which became effective following several court remands. They also complain that they should not be required to participate in each of these administrative reviews, in addition to any future reviews, and then wait until a final determination is reached in each of the reviews in order to challenge the underlying validity of the reviews.

Jurisdiction under 28 U.S.C. § 1581(i) may not be invoked when jurisdiction under another subsection of section 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate. *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed.Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988); *United States v. Uniroyal, Inc.*, 69 CCPA 179, 185, 687 F.2d 467, 475 (1982) (Nies, J., concurring). When another remedy is or could have been available, the party asserting (i) jurisdiction has the burden to show how that remedy would be manifestly inadequate. *Miller & Co.*, 824 F.2d at 963; *American Air Parcel Forwarding v. United States*, 718 F.2d 1546, 1550–51 (Fed.Civ.1983), *cert denied,* 466 U.S. 937, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984).

Defendants argue that an adequate remedy is available under 28 U.S.C. § 1581(c) and urge that the action should be dismissed under the authority of *Miller & Co. v. United States*, 824 F.2d 961 (Fed. Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988), and *Koyo Seiko Co. v. United States*, 13 CIT ——, 715 F.Supp. 1097 (1989).

The Court finds that neither of these cases supports dismissal of the action. The plaintiff in *Miller & Co.* was found to lack standing under 28 U.S.C. § 1581(c) because it failed to participate in the Commerce proceedings. Since the remedy under section 1581(c) was not manifestly inadequate, the court found that the plaintiff lacked standing to invoke jurisdiction under 28 U.S.C. § 1581(i). The jurisdictional issue in *Miller & Co.* was thus decided on the issue of the party's standing. *Miller & Co.*, 824 F.2d at 962 n. 1.

The Indian exporters, unlike the plaintiff in *Miller & Co.*, have participated in the administrative reviews. *Miller & Co.* thus does not compel dismissal of the action for lack of jurisdiction. The other case cited by the government, *Koyo Seiko*, involves an appeal from an interlocutory procedural decision which likewise does not compel dismissal.

In *Koyo Seiko Co. v. United States*, 13 CIT ——, 715 F.Supp. 1097 (1989), the plaintiffs had sought injunctive relief in the Court of International Trade after Commerce denied their requests for a 60 day extension of time to sort through a voluminous administrative record. Commerce denied the requests for additional time (having already granted a 30 day extension) because it was committed to clearing the backlog of administrative reviews and completing new reviews in as timely a manner as possible. The *Koyo* court found there was no jurisdiction under 28 U.S.C. § 1581(i) to challenge Commerce's denial of additional briefing time because the question of whether parties were afforded an adequate opportunity to participate fully in the review could be raised in an action under 28 U.S.C. § 1581(c) after the review results were published. If in an action after the review was completed the court found that the parties did not have an adequate opportunity to participate fully in the proceedings, the court could then remand the matter to Commerce. The court thus held that because the plaintiffs would have an adequate remedy under section 1581(c), jurisdiction under section 1581(i) "is not appropriate at this time." *Koyo Seiko*, 13 CIT at ——, 715 F.Supp. at 1100. *Accord PPG Indus. v. United States*, 2 CIT 110, 112, 525 F.Supp. 883, 884 (1981).

Unlike the unquestionably valid administrative reviews in *Koyo Seiko*, the reviews of Indian iron castings are alleged to have become illegal because of errors found in the original order. The Indian exporters can participate in the reviews and then challenge their legality in an action under section 1581(c) if dumping margins are

found. Nevertheless, nothing in *Koyo Seiko* requires the Indian exporters to participate in a series of illegal administrative reviews before bringing a challenge under 28 U.S.C. § 1581(i) (1982). The Indian exporters may wish to participate in the reviews, however, for the Court may indeed find that the pending reviews are valid. If they do not participate in a review that is found to be valid, subsequent judicial review of an affirmative dumping margin might be unavailable because judicial review is limited to those parties who participate in administrative proceedings. *See RSI (India) Pvt. Ltd. v. United States,* 876 F.2d 1571 (Fed.Cir.1989); *Miller & Co. v. United States,* 824 F.2d 961 (Fed.Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988).

If dumping margins are not found after completion of the reviews, the Indian exporters may not be able to maintain an action under section 1581(c) because they will not be "aggrieved parties," but rather would have to participate in yet another review if one is requested. This scenario supports a finding of jurisdiction under 28 U.S.C. § 1581(i) because a remedy will not be available as to exporters who are not assigned dumping margins, yet are not released from the continuing cycles of pending administrative reviews.

In prior holdings the court has found section 1581(i) jurisdiction in international trade cases. *Nissan Motor Corp. v. United States,* 10 CIT 820, 822–23, 651 F.Supp. 1450, 1453 (1986); *UST, Inc. v. United States,* 10 CIT 648, 650–51, 648 F.Supp. 1, 3–4 (1986), *aff'd,* 831 F.2d 1028, 1031 (Fed. Cir.1987); *Ceramica Regiomontana, S.A. v. United States,* 5 CIT 23, 27, 557 F.Supp. 596, 600 (1983). For example, in *Royal Business Machines, Inc. v. United States,* 1 CIT 80, 89, 507 F.Supp. 1007, 1015 (1980), *aff'd,* 69 CCPA 61, 669 F.2d 692 (1982), the court commented that

> it is not difficult to foresee that certain grievances may arise between the final determinations and the administrative review of the final determinations, under 19 U.S.C. [§] 1675 for which 19 U.S.C. [§] 1516a would be manifestly inadequate. In those instances, the right of action

under 5 U.S.C. [§] 702 and the Court's broad residual jurisdiction under 28 U.S.C. [§] 1581(i) will serve to maintain the comprehensive system of judicial review established by the legislature.

Mindful of the limitations of reliance on legislative history, *see Brechteen Co. v. United States,* 854 F.2d 1301, 1303–04 (Fed.Cir.1988), the House Judiciary Committee report is also instructive on the question of jurisdiction under 28 U.S.C. § 1581(i) in an international trade case:

> The Committee intends that any determination specified in section 516A of the Tariff Act of 1930, or any preliminary administrative action which, in the course of proceeding, will be, directly or by implication, incorporated in or superseded by any such determination, is reviewable exclusively as provided in section 516A. For example, a preliminary affirmative antidumping or countervailing duty determination or a decision to exclude a particular exporter from an antidumping investigation would be reviewable, if at all, only in connection with the review of the final determination by the administering authority [i.e., the International Trade Administration of the United States Department of Commerce] or the [United States International Trade Commission].
>
> However, subsection (i), and in particular paragraph (4), makes it clear that the court is not prohibited from entertaining a civil action relating to an antidumping or countervailing duty proceeding so long as the action does not involve a challenge to a determination specified in section 516A of the Tariff Act of 1930.

H.R.Rep. No. 1235, 96th Cong., 2d Sess. 48, *reprinted in* 1980 U.S.Code Cong. & Admin.News 3729, 3760.

Section 1581(i) enables the court to entertain actions pertaining to antidumping proceedings provided there is no challenge to a determination specified in 19 U.S.C. § 1516a. *Nissan Motor Corp. v. United States,* 10 CIT 820, 822, 651 F.Supp. 1450, 1453 (1986); *Ceramica Regiomontana,*

*S.A. v. United States,* 5 CIT 23, 27, 557 F.Supp. 596, 600 (1983).

The Indian exporters' complaint is not among the determinations listed in 19 U.S.C. § 1516a(a)(2)(B) (Supp. V 1987). Their complaint relates to the validity of a final order which, although valid when issued, has allegedly become invalid as a result of a court remand. Since this situation is not one of those enumerated in 19 U.S.C. § 1516a, the Court's residual jurisdiction under 28 U.S.C. § 1581(i)(4) provides the sole basis upon which this matter can be heard.

Jurisdiction under 28 U.S.C. § 1581(i)(4) was recently found in an action seeking to enjoin pending administrative reviews of antidumping and countervailing duty orders because they were alleged to have been improperly initiated. In finding jurisdiction under (i), the court in *Asociacion Colombiana de Exportadores de Flores v. United States,* 13 CIT ——, 717 F.Supp. 847 (1989), held that Commerce's decision to require numerous producers and exporters to participate in the allegedly illegal reviews was not an unreviewable interlocutory determination, that jurisdiction under 28 U.S.C. § 1581(c) would be manifestly inadequate to challenge initiation of the reviews, and that there was a general presumption in favor of judicial review. The court denied the requested injunction, however, because the plaintiffs failed to show that they had a substantial likelihood of success on the merits of their complaint.

Analogous to the finding of (i) jurisdiction in *Asociacion Colombiana de Exportadores de Flores,* the Court finds that it has jurisdiction under 28 U.S.C. § 1581(i)(4) (1982) to decide whether a pending administrative review is illegal because it is based on a order which has allegedly become invalid. This is a action which directly challenges the administration of the United States antidumping laws. As to Indian exporters who are not found to be dumping when the preliminary results are published, there will be no jurisdiction available under 28 U.S.C. § 1581(c) (1982). Rather, those Indian exporters would be required to undergo yet another allegedly illegal review,

and possibly yet another after that if one is requested. The Indian exporters' complaint hopes to shatter this cycle. The defendants are directed to answer the complaint within 30 days.

## II. MOTION TO ENJOIN PENDING REVIEWS

■ Finding that the Court has jurisdiction under 28 U.S.C. § 1581(i), the Court turns to the requested injunctive relief.

In order to prevail on their motion for a preliminary injunction, the Indian exporters must show (1) threat of immediate and irreparable injury; (2) likelihood of success on the merits; (3) that the public interest would be better served by issuing rather than by denying the injunction; and (4) the balance of hardships on the parties favors issuing the injunction. *See, e.g., Matsushita Elec. Indus. Co. v. United States,* 823 F.2d 505, 509 (Fed.Civ.1987); *Zenith Radio Corp. v. United States,* 710 F.2d 806, 809 (Fed.Civ.1983); *Komatsu Forklift Mfg. Co. v. United States,* 13 CIT ——, ——, 717 F.Supp. 843, 846 (1989).

The Court finds that there has been no showing of an "irreparable injury."

The expenses and effort involved in the defense of litigation do not constitute "irreparable injury" that may justify a preliminary injunction. *Federal Trade Comm'n v. Standard Oil Co. of Ca.,* 449 U.S. 232, 244, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980); *Renegotiation Bd. v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974); *UST, Inc. v. United States,* 831 F.2d 1028, 1032 (Fed. Cir.1987); *Matsushita Elec. Indus. Co. v. United States,* 823 F.2d 505, 509 (Fed.Cir. 1987). Even unrecoverable litigation costs do not constitute irreparable injury, nor the expense and disruption associated with delay in administrative proceedings. *Nissan Motor Corp. v. United States,* 10 CIT 820, 824, 651 F.Supp. 1450, 1454 (1986). Increased business expenses alone also do not justify an injunction. *S.J. Stile Associates, Ltd. v. Snyder,* 68 CCPA 27, 30–31, C.A.D. 1261, 646 F.2d 522, 525–26 (1981); *Hyundai Pipe Co. v. United States Int'l Trade Comm'n,* 10 CIT 695, 699, 650

F.Supp. 174, 176 (1986); *American Inst. for Imported Steel, Inc. v. United States,* 8 CIT 314, 318, 600 F.Supp. 204, 208 (1984).

The Indian exporters (with the possible exception of Govind Steel) have already filed responses to Commerce questionnaires in the two reviews, and with respect to the first review, merely await Commerce's issuance of an already overdue preliminary determination. The Indian exporters are thus not claiming that the cost of proceeding through a review constitutes injury, but rather that the lost customers and lost business that will result from having an affirmative review determination issued when no valid underlying order exists constitutes injury.

The Indian exporters claim that publication of the preliminary or final results in either review will cause at least some of the exporters to lose sales, customers, and market share. They assert that a purchaser will refuse to buy from an exporter who has been assigned a dumping margin in a review and instead purchase from another Indian exporter who is not found to be dumping. The exporters argue that this loss of market share to other suppliers will likely never be recovered.

The Court finds the Indian exporters' argument to be highly speculative. First, there are a number of companies involved in each of the reviews, and there is as yet no evidence that any of them are dumping. Indeed, the preliminary results may show that none of the companies have affirmative dumping margins. Second, there is no evidence that a purchaser of Indian iron castings would switch suppliers based upon an affirmative preliminary determination. Contracts may be structured so that the delivery prices remain unchanged even if an antidumping duty is added. Thus, it is speculation on top of speculation that any Indian producer would suffer irreparable injury from Commerce's publication of preliminary review results. The ordinary consequences of involvement in antidumping duty procedures do not constitute irreparable harm. *UST,* 831 F.2d at 1032; *Matsushita,* 823 F.2d at 509; *Krupp Stahl AG v.*

*United States,* 4 CIT 244, 246, 553 F.Supp. 394, 396 (1982).

## CONCLUSION

The Court finds that it has jurisdiction under 28 U.S.C. § 1581(i) (1982) to decide the legality of a pending administrative review based on an allegedly invalid antidumping order. The defendants are directed to answer the complaint within 30 days. The Court finds, however, that the Indian exporters are not entitled to injunctive relief against publication of preliminary or final administrative review results.